IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**KRISTEN CUMMINGS**                                    **PLAINTIFF**

v.                              Case No. 5:24-CV-_____

**GOODLEAP, LLC**                                       **DEFENDANT**

## ORIGINAL COMPLAINT

COMES NOW Kristen Cummings, by and through her attorneys Chris Burks and Stewart Whaley of WH LAW, for her Original Complaint against Goodleap, LLC, she does hereby state and allege as follows:

### I. PRELIMINARY STATEMENTS

1.      Plaintiff brings this action against the Defendant for violation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000(e)2 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, et seq. ("ACRA") for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and costs, including reasonable attorneys' fees, as a result of Defendant's discriminatory actions toward Plaintiff, resulting in her termination.

2.      Plaintiff received inequitable treatment and an adverse employment action as a result of her sex, which is female, and as a result of her status as a disabled person with a disability that substantially limited a major life activity.

3.      Upon information and belief, Defendant has willfully and intentionally committed violations of Title VII, ADA, and ACRA, as described, *infra*.

## II. JURISDICTION AND VENUE

4.      The United States District Court for the Western District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the Title VII and ADA.

5.      Plaintiff's claims under ACRA form part of the same case or controversy and arise out of the same facts as Title VII and ADA claims alleged in this Complaint.

6.      Therefore, this Court has supplemental jurisdiction over Plaintiff's ACRA claims pursuant to 28 U.S.C. § 1367(a).

7.      The acts complained of herein were committed and had their principal effect within the Fayetteville Division of the Western District of Arkansas. Accordingly, venue is proper within this District pursuant to 28 U.S.C. § 1391.

8.      Defendant does business in this District and a substantial part of the events alleged herein occurred in this District.

9.      The witnesses to Title VII, ADA, and ACRA violations alleged in this Complaint reside in this District.

## III. THE PARTIES

10.      Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

11.      Plaintiff is a resident and citizen of Benton County, Arkansas.

12.      Plaintiff Kristen Cummings was hired by Defendant in August 2020 as an underwriter.

13.      She was terminated by Defendant in September 2023.

14.     At all material times, Plaintiff has been entitled to the rights, protection, and benefits provided under Title VII, ADA, and ACRA.

15.     Defendant Goodleap, LLC is a foreign limited liability company headquartered in California.

16.     Defendant is a finance technology company that provides financing options for the residential solar energy industry.

17.     Defendant Goodleap, LLC can be served through its agent for service in Arkansas, CT Corporation System, at 320 S Izard St., Little Rock, AR 72201.

18.     Defendant Goodleap, LLC is an "employer" within the meanings set forth in Title VII, ADA, and ACRA, and was, at all times relevant to the allegations in this Complaint, Plaintiff's employer.

## IV.     FACTUAL ALLEGATIONS

19.     Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

20.     Plaintiff began working for Defendant as an underwriter in August 2020.

21.     In June 2021, Plaintiff was injured in a car accident. She was subsequently diagnosed with Mild Neurocognitive Disorder as a result of a traumatic brain injury. Plaintiff was on leave while recovering from this injury.

22.     When Plaintiff returned to work, she was promoted to Escalation Case Manager in December 2021 and again to Supervisor of Customer Support Team in January 2022, which required her to manage a team of twelve to fifteen people.  In October 2022, Plaintiff was

transferred to a position as a Client Support Manager. Plaintiff continued in this position until Defendant terminated her.

23.     In May 2022, Plaintiff was required to have a disciplinary conversation with a volatile male employee. This employee ultimately tried to attack another employee and had an outburst in Defendant's office, requiring Plaintiff (the highest-ranking employee in the office at that time) to have him removed from the building.

24.     This incident was extremely traumatic for Plaintiff, and she was diagnosed with additional conditions after this incident.

25.     In addition to Mild Neurocognitive Disorder, Plaintiff has been diagnosed with Attention Deficit Hyperactivity Disorder, Recurrent Major Depression, Generalized Anxiety Disorder, Posttraumatic Stress Disorder, and Avoidant Personality Disorder.

26.     These conditions significantly impaired Plaintiff's ability to perform major life activities like focusing, recalling information, concentrating, reading, and communicating.

27.     As a result of these conditions, Plaintiff qualified for protections under the Americans with Disabilities Act.

28.     After  Plaintiff reported these conditions to Defendant, their treatment of her changed, causing Plaintiff's health conditions to worsen.

29.     Plaintiff had worked remotely for Defendant after completing her initial training.

30.     Defendant told Plaintiff she could no longer work remotely unless she had a medical accommodation to do so, even though her department was still allowed to work remotely.

31.    In March 2023, Plaintiff requested accommodations for her disability under the Americans with Disabilities Act, including remote work, a four-day work week with 10-hour days, and cognitive breaks.

32.    Defendant approved Plaintiff's accommodation requests to work remotely and denied her request to work a four-day week with 10-hour days. Instead, they changed Plaintiff's schedule to work Tuesday through Saturday, which Plaintiff never requested and which did not address the health issues (related to her diagnosed disabilities) that caused Plaintiff to originally make this accommodation request.

33.    Even though Defendant approved Plaintiff's request to take cognitive breaks at certain times during the workday, when she used this accommodation, Defendant's employees, including Plaintiff's supervisor and Defendant's HR staff, made harassing and discriminatory comments to Plaintiff about Plaintiff "napping at work."

34.    When Plaintiff explained that she was not napping, she was taking a cognitive break due to the impact of her disabilities, these employees laughed at her and continued to make remarks about her napping.

35.    As a result of this treatment, Plaintiff stopped using her accommodation for cognitive breaks.

36.    In March 2023, Plaintiff's health worsened to the point she had to request FMLA leave to recover from her health conditions.

37.    She returned to work in June 2023.

38.    In July 2023, Plaintiff requested a disability accommodation of being moved to a new team. Defendant denied this request.

39.     In August 2023, Plaintiff requested a disability accommodation of working a part-time schedule.

40.     After Plaintiff made this request, Defendant told her that they accepted her resignation, even though Plaintiff did not resign (and has never resigned) from her employment with Defendant.

41.     When Plaintiff attempted to contact Defendant to discuss their assertion that she resigned, they blocked her number and eventually told her that she was not permitted to speak to anyone who worked for Defendant.

42.     In May 2022, Plaintiff worked with a male coworker who also had mental health conditions.

43.     This coworker requested accommodations for his conditions, including working remotely and being assigned to another team.

44.     Defendant approved these accommodations for Plaintiff's male coworker without requiring this coworker to submit the medical documents and information Plaintiff was required to provide.

45.     Defendant also placed this male coworker on paid administrative leave to allow him time to recover from his mental health conditions, but would not allow Plaintiff paid leave time.

46.     Plaintiff was treated disparately on the basis of both her disabilities and her sex, which is female, which resulted in Plaintiff being denied requested accommodations for her disability, Defendant harassing Plaintiff because of an accommodation for her disability, and Defendant terminating Plaintiff in September 2023.

47.     During her employment, Plaintiff requested accommodations for her disabilities, including working remotely, working a part-time or modified schedule, and taking breaks at certain times during the workday.

48.     Defendant denied Plaintiff's requests to work a part-time or modified schedule and failed to engage in an interactive process with her to offer her alternate reasonable accommodations.

49.     Defendant harassed Plaintiff when she utilized her accommodation of taking cognitive breaks through the workday, telling Plaintiff that she was "napping at work" and laughing at Plaintiff when she complained that this was not true.

50.     Defendant employed a similarly situated male coworker who was allowed requested accommodations like working remotely and transferring to another team.

51.     Defendant did not require this coworker to submit the medical paperwork and information that Plaintiff was required to supply.

52.     Defendant also offered this coworker accommodations not offered to Plaintiff, such as being placed on paid administrative leave.

53.     As a result, Plaintiff was disparately treated from her male coworker because she was not denied accommodations she requested, she was not offered an accommodation that a male coworker received, she was harassed by Defendant when she used an approved accommodation, and she was required to provide medical information and documents that her coworker did not have to provide.

54.     As a result of the ongoing discrimination Plaintiff experienced as a result of her sex, which is female, and her status as a disabled person, Plaintiff was terminated from her employment in September 2023.

## V.    FIRST CLAIM FOR RELIEF – Title VII Claims

55.    Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

56.    Plaintiff filed a timely charge with the EEOC, received a right to sue letter, and thus exhausted her administrative remedies.

57.    Defendant engaged in unlawful employment practices in violation of 42 U.S. Code §2000e-2.

58.    Specifically, and as detailed above, Plaintiff, who is female, suffered adverse employment actions of being terminated when she requested accommodations similar to the accommodations requested by a disabled male coworker.

59.    Defendant employs men who were not subject to the same treatment that Plaintiff experienced during her employment.

60.    As a result, Plaintiff was treated disparately from Defendant's male employees.

61.    At all relevant times, Plaintiff could perform the essential function of the position for which she was hired.

62.    However, Plaintiff was terminated from her position within the relevant statutory period.

63.    The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex, which is female.

64.    The unlawful employment practices complained of above were and are intentional.

65.     The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

66.     Pursuant to Title VII of the 1964 Civil Rights Act, as amended, Plaintiff is entitled to, and she seeks, an additional amount as compensatory and punitive damages equal to the sum of her lost wages or salary, benefits and/or other compensation denied or lost to her by reason of Defendant's violations of Title VII, plus any interest she is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of Title VII.

## VI.     SECOND CLAIM FOR RELIEF – ADA Claims

67.     Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

68.     Plaintiff filed a timely charge with the EEOC alleging violations of Title I and Title V of the ADA by Defendant.

69.     Plaintiff received a right to sue letter, and thus exhausted her administrative remedies.

70.     Defendant engaged in unlawful employment practices in violation of the Americans with Disabilities Act of 1990.

71.     Specifically, and as detailed above, Plaintiff, who is disabled, was terminated as a result of disability discrimination.

72.     Plaintiff was denied accommodations she requested for her disability, such as working a part-time or modified schedule and transferring to another team.

73.    Defendant failed to engage in an interactive process with Plaintiff by offering her other reasonable accommodations.

74.    When Plaintiff utilized her accommodation of taking cognitive breaks throughout the workday, Defendant made harassing and discriminatory comments to her about Plaintiff "napping at work" and laughed at Plaintiff when she complained about these comments.

75.    When Plaintiff requested to work a part-time schedule, Defendant terminated Plaintiff by telling her they accepted her resignation, even though Plaintiff had not resigned.

76.    Defendant employs non-disabled employees who were not subject to the same treatment that Plaintiff experienced during her employment.

77.    Defendant allows non-disabled employees to transfer to other teams, work part-time or modified schedules, and take breaks through the workday.

78.    As a result, Plaintiff was treated disparately from Defendant's non-disabled employees.

79.    At all relevant times, Plaintiff could perform the essential function of the position for which she was hired with reasonable accommodations in place.

80.    However, Plaintiff was terminated from her position within the relevant statutory period.

81.    The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

82.    The unlawful employment practices complained of above were and are intentional.

83.    The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

84.    Pursuant to Americans with Disabilities Act of 1990, Plaintiff is entitled to, and she seeks, an additional amount as compensatory and punitive damages equal to the sum of her lost wages or salary, benefits and/or other compensation denied or lost to her by reason of Defendant's violations of the ADA, plus any interest she is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of the ADA.

## VII.    THIRD CLAIM FOR RELIEF – ACRA Claims

85.    Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

86.    Plaintiff filed a timely charge with the EEOC, received a right to sue letter, and thus exhausted her administrative remedies.

87.    Defendant engaged in unlawful employment practices at their facility in violation of Ark. Code Ann. §§ 16-123-101, *et seq.*

88.    Specifically, and as detailed above, Plaintiff, who is disabled, was denied accommodation requests, harassed by Defendant when she utilized her accommodation requests, and ultimately terminated when she requested to work a part-time schedule as an accommodation for her disabilities.

89.    Additionally, Plaintiff, who is female, was terminated when she requested accommodations similar to the accommodations requested by a disabled male coworker.

90.    As a result, Plaintiff was treated disparately on the basis of her disability status and her sex, which is female.

91.    Defendant employs men who were not subject to the same treatment that Plaintiff experienced during her employment.

92.    As a result, Plaintiff was treated disparately from Defendant's male employees.

93.    Defendant employs non-disabled employees who were not subject to the same treatment that Plaintiff experienced during her employment.

94.    As a result, Plaintiff was treated disparately from Defendant's non-disabled employees.

95.    At all relevant times, Plaintiff could perform the essential function of the position for which she was hired with reasonable accommodations in place.

96.    However, Plaintiff was terminated from her position within the relevant statutory period.

97.    The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex, which is female, and her mental, and physical disabilities.

98.    The unlawful employment practices complained of above were and are intentional.

99.    The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

100.    Pursuant to Arkansas Civil Rights Act, as amended, Plaintiff is entitled to, and she seeks, an additional amount as compensatory and punitive damages equal to the sum of her lost wages or salary, benefits and/or other compensation denied or lost to her by reason of Defendant's

violations of ACRA, plus any interest she is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of ACRA.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Kristen Cummings respectfully prays that Defendant be summoned to appear and to answer herein as follows:

(A)    A declaratory judgment that Defendant's practices violate Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000(e)-2 and the related regulations;

(B)    A declaratory judgment that Defendant's practices violate the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.* and the related regulations;

(C)    A declaratory judgment that Defendant's practices violate Americans with Disability Act of 1990 and the related regulations;

(D)    Judgment for damages pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S. Code §2000(e)-2, *et seq.* for all compensation, compensatory, and punitive damages owed to Plaintiff;

(E)    Judgment for damages pursuant to Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.*, for all compensation owed Plaintiff for back pay and associated interest and fees;

(F)    Judgment for damages pursuant to Americans with Disabilities Act of 1990, for all compensation, compensatory, and punitive damages owed to Plaintiff;

(G)    An order directing Defendant to pay compensatory and punitive damages to Plaintiff along with pre-judgment interest, reasonable attorney's fees, and all costs connected to this action;

(H)      Such other and further relief as this Court may deem necessary, just and proper.

Respectfully submitted,

**Kristen Cummings, PLAINTIFF**

wh Law
Fayetteville Office
479.888.4357

By:    Chris Burks (ABN: 2010207)
chris@wh.law

Mailing Address:
1 Riverfront Place, Suite 745
North Little Rock, AR 72114